UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEX J. NARCISO MARTINEZ,

    Plaintiff,

v.                                           Case No.: 2:19-cv-33-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY and SSA,

    Defendants.
_____/

## **OPINION AND ORDER**

Plaintiff Alex J. Narciso Martinez filed a Complaint on January 21, 2019. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income. (Doc. 19 at 1). The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions. (Doc. 19). For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**　**Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2),

1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II. Procedural History

Plaintiff filed a claim for supplemental security income on May 6, 2016. (Doc. 19 at 1). Plaintiff asserted an onset date of October 16, 2007. (*Id.*). Plaintiff's claim was denied at the initial level and upon reconsideration. (*Id.*). Plaintiff requested an administrative hearing, which was held on October 12, 2017, before Administrative Law Judge (ALJ) Ryan Johannes. (*Id.*). The ALJ issued an unfavorable decision on March 2, 2018. (*Id.*). The ALJ found Plaintiff not disabled from May 6, 2016, the date the application was filed, through the date of the decision. (Tr. 28). On November 30, 2018, the Appeals Council denied Plaintiff's request for review. (Doc. 19 at 1). Plaintiff filed a Complaint in the United States District Court on January 21, 2019. (Doc. 1). This case is ripe for review.

## III. Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden

2

shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2016, the application date. (Tr. 17). At step two, the ALJ determined that Plaintiff has the following severe impairments: borderline intellectual functioning and language disorder (20 C.F.R. § 416.920(c)). (*Id.* at 18). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (*Id.*).

At step four, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand remember, and carry out simple, repetitive tasks and make simple work-related decisions. He can have occasional interaction with the public and frequent interaction with coworkers. He is limited to work in a routine work setting with only occasional changes in the work routine. He is limited to work that is not fast-paced, with no strict time or high quota demands.

(Tr. at 20-21). Also at step four, the ALJ determined that Plaintiff has no past relevant work. (*Id.* at 27). At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 27). Further, based on the Vocational Expert's testimony, the ALJ found that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform the following jobs: (1) general laborer (DOT 909.687-014), heavy level of exertion with an SVP 2; (2) hand packager (DOT 920.587-018), medium level of exertion with an SVP 2; and (3) mail sorter (DOT 209.687-026),

light level of exertion with an SVP 2. (*Id.* at 27). The ALJ concluded that Plaintiff was not under a disability from May 6, 2016, the date the application was filed, through the date of the decision. (*Id.* at 28).

**IV.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises one issue. As stated by the parties, the issue is:

> Whether the ALJ properly rejected and therefore excluded from his RFC finding, limitations assessed in the opinions he gave the greatest weight.

(Doc. 19 at 21). The Court addresses this issue below.

Plaintiff argues that the ALJ erred by assigning great weight to certain medical and nonmedical opinions, by not including all of the opinions in his RFC determination, and by not explaining his reasons for failing to do so. (Doc. 19 at 24). The Commissioner contends that the ALJ properly considered all the evidence on record and that his RFC finding accounts for all of Plaintiffs' limitations. (*Id.* at 28, 30).

As an initial matter, the issue raised by Plaintiff deals with the weight afforded to various opinions, including those of medical and non-medical sources. Because Plaintiff argues first whether the ALJ properly rejected certain medical opinions, the Court will turn to that sub-issue.

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When evaluating a medical opinion, the ALJ considers various factors including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d),

416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id*. Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Further, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*. Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

A.   **Medical Opinions**

Plaintiff argues that the medical opinions in the record included greater limitations than those found by the ALJ. (*See* Doc. 19 at 23). In particular, Plaintiff contends that because the ALJ afforded great weight to agency psychologist, Dr. Stader, he was required to explain his rejection of Dr. Stader's opinion. (*Id*. at 24). Plaintiff maintains Dr. Stader's examination showed that he displayed "visual and auditory memory deficits, displayed agitation, irritation and

6

isolation, had significant global deficits across all academic domains, and sometimes had poor or fair insight and judgment." (*Id*. (citing Tr. 25)). It appears that Plaintiff argues that the RFC cannot be supported by substantial evidence for failing to include these limitations, as well as his mental health symptoms, which "moderately to severely impact his activities of daily living, vocational performance, and interpersonal interactions." (*See id*.).

As further support, Plaintiff points to the other medical opinions in the record. (*Id*. at 26). Plaintiff cites, *inter alia*, a recommendation from Dr. Zsigmond in 2012 recommending that Plaintiff engage in a vocational training program and a diagnosis of autism by his treating psychologist, Dr. Jennifer Meyer, in 2016 in which she opined Plaintiff cannot work. (*Id*. at 26 (citing Tr. 284, 421)). Therefore, Plaintiff alleges the ALJ's failure to include additional limitations or to explain why he rejected aspects of these opinions, makes it impossible for a reviewing court to determine whether the ALJ's decision is supported by substantial evidence. (*Id*. at 27).

The Commissioner responds by arguing that the ALJ properly considered the medical source opinions on the record. (*Id*.).

Upon consideration, the Court finds the ALJ properly weighed the medical opinions in the record. While an ALJ is required to give a treating physician special deference, there is no such requirement for non-treating sources. *Barnhart*, 357 F.3d at 1240-41. Dr. Stader, being a non-treating physician, was not entitled to any special deference by the ALJ. The ALJ explained Dr. Stader's opinion in his decision, noting that:

> On October 10, 2017, Sally Stader, Ph.D. completed a consultative examination. Dr. Stader reported that the claimant's symptoms moderately to severely impacted his activities of daily living, vocational performance, and interpersonal interactions (Ex. 7F/6). This opinion is given considerable weight. The record shows that the claimant had visual and auditory memory deficits, displayed

>agitation, irritation, and isolation, had significant and global deficits across all academic domains, and sometimes had poor or fair insight and judgment.

(Tr. at 25).

The Court finds the ALJ properly included and considered Dr. Stader's opinion in making his RFC finding. The ALJ properly accounted for Plaintiff's limitations and noted that, in accordance with Dr. Stader's finding, "[b]ecause the claimant has a been diagnosed with borderline intellectual functioning and a language disorder, with symptoms including visual and auditory memory deficits and occasional trouble focusing, he is limited to simple, repetitive tasks and simple work-related decisions." (*Id*. at 26). Therefore, the Court finds that the ALJ's RFC finding properly considered Dr. Stader's opinion.

Notably, although Plaintiff does not argue the ALJ erred as to the weight afforded to Dr. Meyer, Plaintiff refers to her as a treating psychiatrist. (Doc. 19 at 16). Therefore, it is worth observing that the ALJ properly considered and explained his reasoning for affording Dr. Meyer only partial weight, stating:

> State agency psychological consultant Jennifer Meyer, Ph.D. reported that the claimant could recall simple work procedures and instructions, could sustain attention to complete simple, repetitive tasks for two-hour segments over an eight-hour workday, could not work in high-stress or fast-paced work environments, could adapt to simple and gradual changes in the work environment, and could complete simple, routine, repetitive tasks (Ex. 5 A). The undersigned gives this opinion partial weight. The record shows that the claimant had intact immediate and recent memory (Ex. lF/2; 7F/3). He could not complete serial calculations or basic arithmetic problems, but displayed adequate concentration and excellent focus at various appointments (Ex. 5F/4; 7F/3). This evidence supports most of Dr. Meyer's opinion, except it is not consistent with her assessment that the claimant can perform tasks for two-hour segments. Instead, the evidence supports the claimant's ability to perform tasks throughout the workday because he had generally adequate concentration.

(Doc. 19 at 16; Tr. 25). Accordingly, the Court finds the ALJ properly considered and explained his reasoning for rejecting any aspects of Dr. Meyer's opinion.

Further, the Court finds the ALJ properly evaluated all of the medical evidence and other evidence in the record when reaching his RFC finding. (Tr. 21-26). In explaining his RFC determination, the ALJ first noted that Plaintiff's statements regarding his mental limitations were inconsistent with the medical evidence and the record. (*Id*. at 23). The ALJ discussed a 2012 psychological evaluation, where although Plaintiff clearly displayed deficits in intellectual functioning, Plaintiff showed good recall, his judgment and insight were adequate, and his thought processes were directed, logical, and coherent. (*Id*. at 21-22). The ALJ noted that in 2015, Plaintiff's primary care doctor reported that he had problems with concentration, motor function, and depressed feeling. (*Id*. 22). Notably, however, during the same period Plaintiff underwent a vocational evaluation where Plaintiff was reported to have had excellent focus, and was polite, eager, and put forth good effort despite having difficulties in making decisions. (*Id*.). Further, the vocational examiner noted Plaintiff's behavior did not preclude him from participating in employment. (*Id*.). The ALJ also made mention of a 2015 a behavioral assessment, which indicated that while Plaintiff reported feelings of depression and anxiety, he was cooperative and had normal mood, affect, and speech. (*Id*.).

Importantly, the record supports the ALJ's finding that Plaintiff's mental health improved significantly over treatment. (*Id*. 23). Plaintiff was discharged from therapy services in June 2016. (*Id*.). Throughout 2017, the record indicates that Plaintiff made substantial progress. (*See id*. at 404-05). According to records of psychiatric and behavioral consultations, from April 26, 2016 to March 2, 2017, Plaintiff progressed from inappropriate appearance, dearth of speech, disorganized thought process, paranoia, and agitation (*id*. at 309), to having appropriate

9

appearance, being interactive, pleasant, and cooperative (*id*. at 433, 443, 452). Further, Plaintiff's evaluations in 2017 showed normal speech, logical and organized thought process and content, as well as a stable mood and intact cognitive function. (*Id*.).

The Court also notes that Plaintiff's own admissions do not support the need for any additional limitations. (*Id*. at 97-102). In his decision, the ALJ noted:

> The hearing testimony is also inconsistent with the alleged limitations. The claimant testified that he has never really tried to work, applying to only one job in the past. In addition, he said that he wanted to work and believed he could work. He testified that he could prepare meals, wash dishes, and do household chores. His mother testified that that the claimant could keep track of food, shop for himself, and do chores. In sum, the medical evidence and other evidence in the record is not consistent with the allegations regarding the claimant's symptoms and limitations.

Plaintiff's testimony bolsters the conclusion that any additional limitations are not fully consistent with the record. *See Denomme*, 518 F. App'x at 877 (noting that even in the context of a treating physician's opinion, the ALJ considers the consistency of the opinion with the record as a whole). The Court finds the ALJ properly weighed the medical evidence and record as a whole in making his RFC determination. *See id*. at 877-78. Accordingly, the Court does not find remand appropriate.

The Court next turns to Plaintiff's arguments regarding the ALJ's failure to reject certain non-medical opinions, specifically the opinions of vocational specialist, Ms. Tisherman, and vocational expert, Ms. Tiago.

### B. Non-Medical Opinions

Plaintiff next argues that by assigning significant weight to the non-medical opinions of Ms. Tisherman and Ms. Tiogo, the ALJ was required to explain any exclusion of these limitations/recommendations in Plaintiff's RFC. (Doc. 19 at 25). Further, Plaintiff appears to

argue that the opinions and recommendations provided by the vocational specialist, Ms. Tisherman, and the vocational expert, Ms. Tiogo, indicate that Plaintiff required more accommodations than those addressed in the ALJ's RFC determination.  (*See id*. at 23, 24-25).

According to the SSA's regulations, an ALJ must consider all relevant evidence in the record, including sources who have seen the claimant in their professional capacity.  SSR 06-03P, 2006 WL 2329939, at *2.  In making a disability determination, in addition to evidence from acceptable medical sources, an ALJ may use evidence from "other sources," but, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment . . . [h]owever, information from such 'other sources' . . . may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id*.  The regulation further provides that in considering the opinions of other sources, an ALJ should consider factors such as:  the nature of the relationship between the source and individual; the sources qualifications; area of specialty or expertise; the degree to which the source presents relevant evidence to support his or her opinion; and whether the opinion is "consistent with other evidence, and any other factors that tend to support or refute the opinion."  *Id*. at *3.

The purpose of SSR 09-03P is, *inter alia*, to "clarify how the SSA considers opinions from sources who are not 'acceptable medical sources' in disability claims."  *Id*.  While the Court is not bound by the Social Security Regulations, the Court affords them deference.  *See Young v. Colvin*, No. 3:14-cv-888-J-JRK, 2015 WL 4620573, at *5 (M.D. Fla. July 31, 2015); *see also Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011).

Unlike the opinions of treating sources, the opinions of Ms. Tisherman and Ms. Tiogo are not entitled to deference.  *See Phillips*, 357 F.3d at 1240-41.  Further, it is the ALJ's

responsibility to determine a Plaintiffs' RFC, not the responsibility of medical or non-medical sources. *Greene v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("[T]he ultimate determination of disability is referred for the ALJ."). While the ALJ gave the opinions of Ms. Tisherman and Ms. Tiago significant weight, it appears he did so because their evaluation supported his finding that, "Plaintiff did not display behaviors that precluded him from participating in employment" and the fact that they had "suggested several possible jobs." (Tr. 25).

The ALJ explained his decision to give Ms. Tisherman and Ms. Tiago's evaluation significant weight by stating: "the record supports the evaluation as it shows that the claimant was generally well groomed, had a normal thought process, could maintain excellent focus, and could be cooperative and friendly with good eye contact." (*Id*. at 26). Additionally, the ALJ stated:

> [During the evaluation], the claimant was friendly and cooperative. He was dressed appropriately, but had notable body odor (Ex. 5F/3). He was fidgety, but the evaluator noted that his movement appeared to make him better able to focus and remove environmental distractions. As such, this fidgeting was not attributed to nervousness or anxiety. The examiner noted excellent focus, as the claimant remained on task throughout all exercises and performed adequately in physical functions required for work-related duties (Ex. 5F/4). The claimant exhibited fleeting eye contact and trouble responding verbally to questions. However, he was able to communicate in other manners that allowed him to convey his intent, such as non-verbal gestures. He displayed difficulty making decisions and setting goals. However, the claimant was eager and put forth good effort. He was polite, with normal adaptive skills. The examiner noted that he retained verbal instructions and demonstrations (Ex. 5F/25). The examiner ultimately concluded that the claimant did not display behaviors that precluded him from participating in employment and suggested several possible jobs (Ex. 5F/5, 9, 27). Finally, the examiner recommended that the claimant look for a transition program that would allow him to attend school until age twenty two so that he could mature and learn work skills. The examiner noted that the claimant was not ready for

>further vocational training or direct job placement at that time (Ex. 5F/28).

(*Id*. at 22). It appears, therefore, that the ALJ explained his reasoning for affording Ms. Tisherman and Ms. Tiago significant weight.

Additionally, while Plaintiff argues the ALJ was required to include the findings of Ms. Tisherman and Ms. Tiogo, Plaintiff fails to note that their findings were not conclusive. (*See id*. at 397-98). As succinctly stated by The Commissioner:

>Many of the statements by vocational specialist Tisherman and vocational expert Toigo that Plaintiff contends the ALJ should have weighed and included in his RFC are equivocal: "[a] supported employment job coach *is recommended*," Tr. 398; "pictorial checklist *may* be *helpful*," Tr. 398; "some employers may be put off by his movements and posturing," Tr. 397; "may not advocate for himself adequately," "may need cues and reminders," "may need someone else to assist him." Tr. 397.

(Doc. 19 at 29-30). Additionally, the ALJ was not required to state with any particularity the vocational specialist/expert's opinions, nor were the opinions dispositive of Plaintiffs' RFC determination. *See* SSR 06-03P, 2006 WL 2329939 at, *2. The ALJ is to consider the record as a whole in making its RFC determination, and the Court finds the ALJ properly weighed the evidence in the record in making his determination.

As a final point, while Plaintiff does not fully develop the argument, Plaintiff alleges the ALJ was required to include all the practical effects of Plaintiff's impairments in his RFC determination, and argues the VE's testimony based on an inaccurate hypothetical cannot be supported by substantial evidence. (Doc. 19 at 25). Plaintiff states that "consistent with this authority the [VE] testified that an individual who is off task more than 10% of the workday, needs frequent assistance through the workday, needs a pictorial checklist to complete job duties, or who needs a supported employment job coach would be unable to maintain competitive

employment." (*Id*. (citing Tr. 117-19) (emphasis removed)). Plaintiff concludes that the VE's testimony shows the harm in the ALJ's failure to include these additional limitations or explain their exclusion. (*Id*.).

At the fourth step in the evaluation process, the ALJ is required to determine a plaintiff's RFC and, based on that determination, to decide whether a plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a plaintiff's RFC is within the authority of the ALJ and along with a plaintiff's age education and work experience, the RFC is considered in determining whether a plaintiff can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether a plaintiff can work, the ALJ must determine a plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238-39; 20 C.F.R. § 404.1520(e). An ALJ must consider all of a plaintiff's mental impairments that are sufficiently severe in combination with all of a plaintiff's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

The Court finds for the reasons set forth above that the ALJ properly considered the all the relevant medical and other evidence in the record in making his RFC determination. The ALJ properly asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Tr. 116-17). In his hypothetical to the VE, the ALJ included all limitations reflected in the RFC and the VE testified there are significant jobs in the national economy that Plaintiff could perform. (*Id*. at 117). While the ALJ thereafter questioned the VE as to the significance of some additional limitations, those additional limitations were not included in the ALJ's finding of Plaintiff's RFC. (*See id*.). Thus,

14

because the ALJ posed a hypothetical question that included all of Plaintiff's determined impairments, the VE's testimony constituted substantial evidence. Therefore, remand is not warranted on this basis.

**VI.     Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 32 U.S.C. § 405(g).

2. The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 20, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties